# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

№ 03-CV-5052 (JFB) (LB)

———————————

HORACE DOVE,

Plaintiff,

VERSUS

CITY OF NEW YORK, VENESSA WILLIAMS, STAFF ON WARD 53 AT KINGS COUNTY HOSPITAL, THE PATIENTS ON WARD 53, JEWISH BOARD FAMILY & CHILDREN SERVICES, OWNERS OF MAPLE STREET RESIDENCE, JEFFREY CLARKE, ARLENE BISHOP, ESTHER, THE STAFF AT MAPLE STREET, LIONEL YOUNG, AND ABBOT LABORATORY OF ILLINOIS,

Defendants.

———————————

MEMORANDUM AND ORDER
March 15, 2007

———————————

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Horace Dove ("Dove") brings this action against the City of New York (the "City"), Vanessa Williams ("Williams"), the staff on Ward 53 at Kings County Hospital, and the patients on Ward 53 (collectively, "defendants"), alleging violations of plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983 and various state law claims.[1] Specifically, plaintiff alleges that, during his time as a patient at Kings County Hospital (the "Hospital"), (1) the Hospital's policy or custom of permitting patients to smoke in the Hospital violated plaintiff's rights, (2) the Hospital's staff and several patients conspired to assault plaintiff, and (3) the Hospital's staff failed to protect plaintiff from assaults by other patients on

———————————

[1] Defendants Jewish Board of Family & Children Services, the owners of the Maple Street Residence, Jeffrey Clark, Arlene Bishop, Esther, the Staff at Maple Street, Lionel Young, and Abbot Laboratory of Illinois are no longer parties to this action.

four separate occasions between June 9, 2002 and July 10, 2002.

Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[2] For the reasons that follow, defendants' motion is granted.

## I. BACKGROUND

### A. Facts

Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to plaintiff, the non-moving party.[3] *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005).

The Hospital is operated by defendant City and offers treatment to patients involuntarily committed for treatment of mental health issues. (Dfts.' 56.1 ¶¶ 7-14.)

---

[2] Plaintiff failed to serve the unidentified staff and patients named in the complaint. Thus, those defendants have not appeared in the instant action.

[3] Defendants submitted a statement, pursuant to Local Civil Rule 56.1, which asserts material facts that they claim are undisputed in this case. Defendants also complied with Local Civil Rule 56.2 by providing notice to plaintiff that he is not entitled simply to rely on allegations in his complaint, but is required to submit evidence, including sworn affidavits, witness statements and documents to respond to the motion for summary judgment, pursuant to Fed. R. Civ. P. 56(e). (*See* Dkt. Entry # 84.) This action provided actual notice to plaintiff of the consequences of non-compliance with the requirements of Fed. R. Civ. P. 56. *See, e. g., Irby v. N.Y. Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001) ("[W]e remind the district courts of this circuit, as well as summary judgment movants, of the necessity that *pro se* litigants have actual notice, provided in an accessible manner, of the consequences of the *pro se* litigant's failure to comply with the requirements of Rule 56. . . . [E]ither the district court or the moving party is to supply the *pro se* litigant with notice of the requirements of Rule 56. . . . In the absence of such notice or a clear understanding by the *pro se* litigant of the consequences of failing to comply with Rule 56, vacatur of the summary judgment is virtually automatic."). Although plaintiff did not respond to defendants' Rule 56.1 Statement in the precise form specified by the local rule, the Court overlooks this technical defect and reads plaintiff's responses liberally as he is *pro se*, and considers factual assertions made by plaintiff in his submissions to the Court as contesting defendants' statement of material undisputed facts, where his statements or evidence conflict. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 63, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.") (citations omitted); *see, e.g., Gilani v. GNOC Corp.*, No. 04 Civ. 2935 (ILG), 2006 WL 1120602, at *2 (E.D.N.Y. April 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Therefore, where the Court cites to defendants' Rule 56.1 Statement, plaintiff has not contested that fact in any of his papers. *See, e.g., Pierre-Antoine v. City of New York*, No. 04 Civ. 6987 (GEL), 2006 WL 1292076, at *3 (S.D.N.Y. May 9, 2006) (deeming facts in defendants' Rule 56.1 statement as admitted by *pro se* plaintiff, where plaintiff was provided notice of his failure to properly respond to the summary judgment motion under Local Civil Rule 56.2 and the court's review of the record did not reveal that there was a genuine issue of material fact); *Gilliam v. Trustees of Sheet Metal Workers' Nat'l Pension Fund*, No. 03 Civ. 7421 (KMK), 2005 WL 1026330, at *1 n.2 (S.D.N.Y. May 3, 2005) (deeming defendants' factual assertions admitted where *pro se* plaintiff was provided with notice under Local Civil Rule 56.2 and where plaintiff did not submit evidence controverting those factual assertions).

2

Defendant Williams is a Coordinating Manager in the Behavioral Health Division of the Hospital. According to the New York City Health and Hospitals Corporation's "Position Description" for a Coordinating Manager, Williams' duties include aiding in the maintenance of a safe and hygienic environment at the Hospital, procuring supplies to facilitate the comfort, safety and therapeutic aspects of the Hospital wards, and supervising the staff that maintains the Hospital's wards. (Dfts.' 56.1 ¶ 27; Hewson Decl., Ex. K.) Moreover, according to the City, Williams' duties do not include the supervision over, or responsibility for, any aspect of patient care. (*Id.*)

On June 9, 2002, New York City police officers brought plaintiff to the Hospital. (Dfts.' 56.1 ¶ 5.) After plaintiff's arrival, a treating physician and a social worker diagnosed plaintiff with schizophrenia of the chronic paranoid type. (*Id.* ¶ 7.) They also found that plaintiff was abusive and threatening to others, was a threat to himself and others, and that he suffered from persecutory delusions. (*Id.* ¶¶ 7, 9, 12.) On June 10, 2002, plaintiff was admitted to the Hospital pursuant to New York Mental Hygiene Law Section 9.39, and sent to Ward 53. (*Id.* ¶ 12; Compl. ¶ 29.) Plaintiff's claims arise out a string of incidents that allegedly occurred while plaintiff was a patient at the Hospital.

1. Smoking in the Hospital

According to plaintiff, during his first night at the Hospital, plaintiff's roommates and other patients smoked marijuana and cigarettes in plaintiff's room. (Compl. ¶ 30.) The patients continued to smoke, plaintiff alleges, even though plaintiff told the patients that he had asthma, that he was allergic to marijuana and cigarette smoke, and that the smoke was harmful to him. (*Id.*) Plaintiff also alleges that he complained to the staff about other patients' smoking, but that the staff did nothing to stop the patients from smoking. (*Id.* ¶ 31.) According to plaintiff, the other patients told him that the Hospital staff allowed patients to smoke in their rooms. (*Id.* ¶ 33.)

2. The June 15, 2002 Incident

On or about June 15, 2002, plaintiff and four other patients at the Hospital were involved in a physical altercation. (Hewson Decl., Ex. E.; Compl. ¶ 35.) According to plaintiff, six patients, including one of his roommates, surrounded plaintiff and "viciously assaulted" him. (Compl. ¶ 35.) Plaintiff alleges that "some of the staff in Ward 53" were warned of the attack in advance and "gave their approval." (*Id.* ¶ 38.) According to plaintiff's deposition testimony, the attackers hit him in the face with an iron rod, kicked him in the face, poured chemicals on his left hand, caused him to bleed from his nose and mouth and rendered him unconscious for two to three hours. (Hewson Decl., Ex. G.)

However, according to the Hospital's records, a physician examined plaintiff following the June 15, 2002 altercation and noted that plaintiff had "no visible injury," and did not indicate that plaintiff had any facial injuries, chemical burns on his hands, blood on his skin or clothes, or had suffered a loss of consciousness. (Hewson Decl., Ex. E.) However, the physician noted that plaintiff's eyeglasses were broken during the altercation. (*Id.*) The Hospital's records also indicate that members of the nursing staff had observed plaintiff at fifteen-minute intervals throughout the day on June 15, 2002, and there was no evidence that plaintiff had suffered any injuries during that time. (*Id.*, Ex. H.)

3

According to the Hospital's records, the patients involved in the altercation were separated and counseled as to their behavior. (Hewson Decl., Ex. E.)

### 3. The Chair-Throwing Incident

According to plaintiff, on June 22, 2002, another patient threw "iron chairs at [plaintiff's] head." (Compl. ¶ 43.) Plaintiff alleges that, during the incident, the other patient said that plaintiff had complained too much to the staff. (*Id.* ¶ 44.) According to plaintiff, the assault rendered him unconscious for hours. (Hewson Decl., Ex. G.) Moreover, plaintiff alleges that, following the incident, he ran to the staff office and asked the staff to stop the other patient from assaulting him, but the staff did not tell the other patient to stop. (*Id.* ¶ 43.)

The Hospital's records show that plaintiff was involved in a "chair throwing" incident with another patient on July 2, 2002 rather than, as plaintiff alleges, on June 22, 2002. (Hewson Decl., Ex. F.) According to the Hospital's records, plaintiff was hit in the chest by one of his peers during the incident. (*Id.*) Plaintiff was examined by a physician following the incident on July 2, 2002; the physician found no injuries to plaintiff. (*Id.*, Ex. F.) Moreover, according to the Hospital's records, members of the nursing staff had observed plaintiff at fifteen-minute intervals throughout the day on July 2, 2002, and there was no evidence that plaintiff had been lying on the floor unconscious or that plaintiff had suffered any injuries during that time.[4]

(Hewson Decl., Ex. H.) Also, according to the Hospital's records, a psychiatrist evaluated plaintiff on July 2, 2002 and found that he continued to be delusional. (*Id.*)

### 4. The June 27, 2002 Incident

According to plaintiff, on June 27, 2002, he told Williams that he suffered from asthma and that the smoking by other patients was very harmful to him. (Compl. ¶ 46.) In response, according to plaintiff, Williams told him that patients are permitted to smoke in all of the Hospital's wards and that plaintiff should not complain to the Hospital's staff about other patients smoking in the Hospital. (*Id.* ¶¶ 47, 54.) Moreover, plaintiff alleges that three other patients joined the conversation and that Williams told those three patients that they could "smoke all they want in Ward 53." (*Id.* ¶ 54.)

Plaintiff alleges that, following plaintiff's conversation with Williams, plaintiff saw Williams speak separately with the same three patients. (Compl. ¶ 51.) Plaintiff concedes in the complaint that he could not hear what Williams and the three patients were saying during this separate conversation. (Compl. ¶¶ 51-52.) Moreover, during his deposition, plaintiff confirmed that he had no direct knowledge of the content of the conversation between Williams and the three patients. (Hewson Decl., Ex. G.)

According to plaintiff, on the night of June 27, 2002, five patients, including the three patients with whom Williams had allegedly spoken to, "viciously assaulted" plaintiff in his room. (Compl. ¶ 54.) Plaintiff alleges that Williams had conspired with the alleged attackers to harm plaintiff, and that, during the assault, the attackers allegedly told plaintiff

---

[4] The Hospital's records also indicate that, on June 22, 2002 – the alleged date of the chair-throwing incident according to plaintiff – members of the nursing staff had observed plaintiff at fifteen-minute intervals throughout the day and there was no evidence that such an altercation had occurred or that plaintiff had suffered any injuries during

that time. (Hewson Decl., Ex. H.)

4

that Williams "did not like" plaintiff. (Compl. ¶¶ 56, 58.)

According to the Hospital's records, members of the nursing staff had observed plaintiff at fifteen-minute intervals throughout the day on June 27, 2002, and there was no evidence that an incident occurred or that plaintiff had suffered any injuries during that time. (Hewson Decl., Exs. F, H.)

### 5. The July 9, 2002 Incident

Plaintiff alleges that five patients "viciously assaulted [plaintiff] again" on July 9, 2002. (Compl. ¶ 78.) According to plaintiff, the other patients once again assaulted plaintiff with an iron rod and rendered him unconscious. (Hewson Decl., Ex. G.) Plaintiff alleges that, during the alleged assault, he called out to the staff for help but no one came to help him. (Compl. ¶ 79.)

The Hospital's records do not reflect that an incident occurred on July 9, 2002. According to the Hospital's records, members of the nursing staff had observed plaintiff at fifteen-minute intervals throughout the day on July 9, 2002, and there was no evidence that an incident had occurred or that plaintiff was injured on that day. (Hewson Decl., Exs. F, H.) In particular, according to the Hospital's records, plaintiff was examined by hospital personnel sometime after 1:00 p.m. and was found to be "cooperative and friendly," although still suffering from "persecutory delusions." (*Id.*, Ex. F.) Plaintiff was again observed at 10:00 p.m. and "no complaints [were] voiced" by him to the Hospital's staff. (*Id.*)

On July 10, 2002, plaintiff was transferred from the Hospital to Kingsboro Psychiatric Center, a New York State facility. (Compl. ¶ 84.) Upon arriving at Kingsboro, plaintiff was given a full physical exam by a doctor. (Hewson Decl., Ex. I.) Records of that examination indicate that plaintiff did not have any physical problems except for a rash on his left hand, and that he was in good physical health, had no injury or abnormalities to his head, and denied having any physical ailments. (*Id.*)

### B. Procedural History

Plaintiff commenced the instant action against the City on October 6, 2003. On October 8, 2003, plaintiff filed an amended complaint naming several additional defendants. By Memorandum and Order dated September 28, 2005, the Honorable Nina Gershon dismissed plaintiff's claims against several defendants. On February 10, 2006, the case was reassigned to this Court. On July 17, 2006, defendants moved for summary judgment pursuant to Rule 56.

## II. DISCUSSION

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). Moreover, where the plaintiff is proceeding *pro se*, the Court must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d

5

138, 145-46 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)).

The moving party bears the initial burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). However, once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005).

As such, a *pro se* party's "bald assertion," completely unsupported by evidence, is not sufficient to defeat a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Instead, to overcome a motion for summary judgment, the non-moving party must provide this Court "with some basis to believe that his 'version of relevant events is not fanciful.'" *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Christian Dior-New York, Inc. v. Koret, Inc.*, 792 F.2d 34, 37-39 (2d Cir.1986)); *accord Perez v. N.Y. Presbyterian Hosp.*, No. 05 Civ. 5740 (LBS), 2006 WL 585691, at *3 n.1 (S.D.N.Y. March 20, 2006).

B. Plaintiff's Allegations

The standard rule is that, at the summary judgment stage, the court "is . . . to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, in *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005), the Second Circuit recognized that there is a narrow exception to this well-established rule in the "rare circumstances" where the sole basis for the disputed issues of fact is the plaintiff's "own testimony" which is so lacking in credibility that no reasonable juror could find for the plaintiff. In affirming the dismissal of the plaintiff's suit at the summary judgment stage, the Second Circuit explained:

> [W]e hold that the District Court did not err in granting defendants' motion for summary judgment on the basis that Jeffreys's testimony – which was largely unsubstantiated by any other direct evidence – was "so replete with inconsistencies and improbabilities" that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint.

*Id.* at 505 (citing *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 475 (S.D.N.Y. 2003) (dismissing excessive force claims brought under 42 U.S.C. § 1983)); *see also Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991) (holding that the post-trial sworn statements of the president of plaintiff corporation did not create a factual issue because "a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony");

*Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975) (holding that plaintiff had failed to create an issue of fact where plaintiff's affidavits conflicted with plaintiff's earlier deposition); *Schmidt v. Tremmel*, No. 93 Civ. 8588 (JSM), 1995 U.S. Dist. LEXIS 97, at *10-*11 (S.D.N.Y. Jan. 6, 1995) (finding no genuine issues of material fact where "[n]o reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in [plaintiffs] complaint or in her subsequent missives to the court"); *Ward v. Coughlin*, No. 93 Civ. 1250 (FJS) (RWS), 1995 U.S. Dist. LEXIS 21297, at *11 (S.D.N.Y. 1995) (finding plaintiff's self-serving affidavit incredible as a matter of law); *Price v. Worldvision Enters., Inc.*, 455 F. Supp. 252, 266 n.25 (S.D.N.Y. 1978) (addressing affidavit of party).

Here, the Court believes that there is a clear basis to find that the instant action presents one such "rare circumstance[]" where the plaintiff's testimony is "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint." *Jeffreys*, 275 F. Supp. 2d at 475 (internal quotations and citation omitted). Plaintiff's allegations in his complaint and his deposition testimony provide the sole basis for the alleged disputed issues of fact in this case. However, the credibility of plaintiff's submissions is critically undermined by both the evidence presented by defendants, as well as the gross inconsistencies found in plaintiff's own submissions. *See Law Offices of Curtis V. Trinko, LLP v. Verizon Comm'ns. Inc.*, No. 00 Civ. 1910 (SHS), 2006 WL 2792690, at *9 (S.D.N.Y. Sep. 27, 2006).

First, as set forth in the facts section, the Hospital's records contradict plaintiff's testimony as to the occurrence of several of the alleged assaults and as to the occurrence or the severity of all of plaintiff's alleged injuries.[5] Second, as discussed more fully below, plaintiff has undermined his own allegations regarding Williams' involvement in the alleged June 27, 2002 assault by conceding that he has no personal knowledge, or any other evidence, that Williams conspired to assault him.

Finally, plaintiff's own submissions are replete with contradictory descriptions of the injuries he allegedly suffered as a result of the alleged assaults. As to the alleged June 15, 2002 assault, plaintiff variously asserts that he suffered just "headaches" (Compl. ¶ 39), or "severe brain damage" (Dep. Tr., at 88), as a result of the assault. As to the chair-throwing incident, plaintiff contends both that he was assaulted by five patients (Dep. Tr. at 91), and

---

[5]There is no credible evidence demonstrating that any of the incidents alleged by plaintiff even occurred, save for the June 15, 2002 incident and the chair-throwing incident. As discussed *supra*, the Hospital's records confirm that plaintiff was involved in a physical altercation with four other patients on June 15, 2002, as well as some type of "chair-throwing" incident with another patient on July 2, 2002. However, as to the June 15, 2002 incident, the Hospital's documentation indicates that plaintiff did not suffer any injury as a result of the altercation, much less the severe injuries alleged by plaintiff, which include facial cuts, bleeding, chemical burns, and brain damage. Moreover, plaintiff's own submissions drastically diverge as to the severity of the injuries he allegedly suffered during the June 15, 2002 altercation. Similarly, as to the chair-throwing incident, the Hospital's documentation indicates that plaintiff did not suffer any injury as a result of the incident, much less the severe injuries alleged by plaintiff. Moreover, plaintiff's own allegations regarding the chair-throwing incident are grossly inconsistent.

7

that he was assaulted by just one patient (Compl. ¶ 43). Also as to the chair-throwing incident, plaintiff fails to allege in the complaint that he suffered any injuries during the incident. However, plaintiff asserts in his deposition testimony that he was rendered unconscious as a result of the incident and remained so for "hours." (Pl.'s Dep. at 91-92.) As to the alleged July 9, 2002 assault, plaintiff asserts in his complaint that he "became unconscious" as a result of the assault, and fails to allege what, if any, weapons were used during the assault. However, in his deposition testimony, plaintiff contends that the assailants used an "iron rod" and left a "scar" on his forehead. (Pl.'s Dep. at 108.)

Therefore, the Court finds that, given the complete lack of evidence to support plaintiff's claims regarding these assaults and the alleged severe injuries resulting therefrom, the Hospital documentation fully contradicting such claims, and the drastic inconsistencies in plaintiff's own statements regarding these incidents, dismissal is warranted under *Jeffreys* because no reasonable juror could credit plaintiff's unsubstantiated testimony under these circumstances. However, even if the Court fully credited plaintiff's allegations regarding these incidents, summary judgment is still appropriate because he has produced no competent evidence demonstrating that these defendants are liable for the alleged actions of the other patients. As set forth more fully below, even assuming *arguendo* that the smoking by other patients and all of the assaults referred to in plaintiff's testimony actually occurred, plaintiff has failed to establish a genuine issue as to defendants' liability for the alleged deprivations of plaintiff's rights.

C. Claims Against the Unnamed Defendants

At this stage of the case, discovery has been completed and plaintiff has failed to identify or to serve with process any of the unnamed defendants allegedly responsible for the deprivation of plaintiff's rights. Moreover, plaintiff does not assert that additional discovery will help to ascertain the identities of such individuals. Accordingly, because a "tort victim who cannot identify the tortfeasor cannot bring suit," the Court grants summary judgment as to plaintiff's claims against the unnamed defendants. *Valentin v. Dinkins*, 121 F.3d 72, 75 (2d Cir. 1996); *see, e.g., Peterson v. Tomaselli*, – F. Supp. 2d –, 2007 WL 102073, at *18 (S.D.N.Y. 2007); *Alicea v. City of New York*, No. 04 Civ. 1243 (RMB), 2005 WL 3071274, at *1 n.1 (S.D.N.Y. Nov. 15, 2005).

D. Due Process Claims

Plaintiff asserts, *inter alia*, a violation of his rights under the Eighth and Fourteenth Amendments. However, because plaintiff was not a convicted prisoner at the time of the alleged deprivation of his federal rights, any claim arising from his confinement must be asserted under the Due Process Clause of the Fourteenth Amendment, rather than the provisions of the Eighth Amendment. *See, e.g., Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir.1996); *Vallen v. Carrol*, No. 02 Civ. 5666 (PKC), 2005 WL 2296620, at *9 (S.D.N.Y. Sept. 20, 2005); *see also Fair v. Weiburg*, No. 02 Civ. 9218 (KMK), 2006 WL 2801999, at *4 (S.D.N.Y. Sept. 28, 2006).

"An involuntary civil commitment is a massive curtailment of liberty, . . . and it therefore cannot permissibly be accomplished without due process of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir.1995) (citation and quotation omitted); *see*

8

*Graves v. MidHudson*, No. 04 Civ. 3957 (FB), 2006 WL 3103293, at *3 (E.D.N.Y. Nov. 2, 2006). However, in this case, the complaint, even as liberally construed, fails to allege that plaintiff's rights were violated during the civil commitment process.[6]

However, "'[t]he mere fact that an individual has been committed under proper procedures . . . does not deprive him of all substantive liberty interests under the Fourteenth Amendment.'" *MidHudson*, 2006 WL 3103292, at *3 (citing *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982)). Such individuals retain a right to "'conditions of reasonable care and safety'" during their confinement. *Kulak v. City of New York*, 88 F.3d 63, 77 (2d Cir. 1996) (quoting *Youngberg*, 457 U.S. at 324); *Lombardo v. Stone*, No. 99 Civ. 4603 (SAS), 2001 WL 940559, at *8 (S.D.N.Y. Aug. 20, 2001) (citing *Youngberg*, 457 U.S. at 315-16 ("If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional to confine the involuntarily committed – who may not be punished at all – in unsafe conditions.")); *see also DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199 (1989) ("[T]he substantive component of the Fourteenth Amendment's Due Process Clause requires the State to provide involuntarily committed mental patients with such services as are necessary to ensure their 'reasonable safety' from themselves and others."); *Beck v. Wilson*, 377 F.3d 884, 889-90 (8th Cir. 2004) ("Because [plaintiff] was an involuntarily committed patient . . . the Fourteenth Amendment imposed upon the defendants, as state actors, an affirmative duty to undertake some responsibility for providing [her] with a reasonably safe environment.").

In *Youngberg*, the Supreme Court set forth the standard for adjudicating Section 1983 claims brought by involuntarily committed mental patients against "professional" officials charged with the patients' care. *Youngberg*, 457 U.S. at 322-24; *see Vallen*, 2005 WL 2296620, at *9; *Warheit v. City of New York*, No. 02 Civ. 7345 (PAC), 2006 WL 2381871, at *11 (S.D.N.Y. Aug. 15, 2006); *Lombardo*, 2001 WL 940559; *Marczeski v. Handy*, No. 01 Civ. 01437 (AHN) (HBF), 2004 WL 2476440, at *8 (D. Conn. Sept. 9, 2004) (Fitzsimmons, Magistrate J.). In reviewing such claims, the critical question is whether the charged official's decision alleged to have caused a deprivation was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323; *see Kulak v. City of New York*, 88 F.3d 63, 75 (2d Cir. 1996) ("This standard requires more than simple negligence on the part of the doctor but less than deliberate indifference.").

Notably, however, the Court in *Youngberg* specifically limited the substantial departure standard to claims against "professionals," or "person[s] competent, whether by education,

---

[6] The Court notes that plaintiff's brief in response to the instant motion consists principally of quotations from Supreme Court opinions regarding the process due to individuals prior to their involuntary commitment to a mental hospital. However, the entirety of plaintiff's remaining submissions to the Court – that is, other than his response brief – fail to allege or to address a claim that plaintiff's pre-commitment procedural rights were violated by defendants; nor has plaintiff requested leave to amend his complaint to allege such a claim. Moreover, at his deposition, plaintiff was asked to clarify whether he was, in fact, alleging a violation of his pre-commitment procedural rights. Plaintiff declined to do so. (Hewson Decl., Ex. G.) Accordingly, the Court declines to address any such claim at this time.

9

training or experience, to make the particular decision at issue," and contrasted such persons with non-professionals, or "employees without formal training but who are subject to the supervision of qualified persons." *Youngberg*, 457 U.S. at 323 n.30; *see Kulak*, 88 F.3d at 75. As such, some courts have declined to apply the *Youngberg* standard to officials deemed to be "low-level staff members," and, instead, apply a "deliberate indifference" standard to Section 1983 claims against such officials, asking whether "the [challenged] officials displayed a mental state of deliberate indifference with respect to [plaintiff's] rights." *Marczeski*, 2004 WL 2476440, at *8; *see Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1147 (3rd Cir. 1990) ("Nonprofessional employees who provide care for involuntarily institutionalized mentally retarded individuals are subject even after *Youngberg*, only to a deliberate indifference standard."); *Moore v. Briggs*, 381 F.3d 771, 773 (8th Cir. 2004) (applying deliberate indifference standard to Section 1983 claims against staff at a group home for the mentally retarded); *see also Vallen*, 2005 WL 2296620, at *9 ("I am inclined to agree . . . that the standard of 'deliberate indifference' is the correct one for Section 1983 claims brought by involuntarily committed mental patients and based on alleged failures to protect them that violated their substantive due process rights.").

However, in this case, the Court need not reach the issue of whether defendants' actions should be evaluated under the "substantial departure" or "deliberate indifference" standard because, under either standard, the result is the same: no reasonable factfinder could conclude based upon the evidence, drawing all inferences in plaintiff's favor, that defendants' conduct substantially departed from accepted professional judgment, practices, or standards, or was deliberately indifferent to plaintiff's constitutional rights. *See Vallen*, 2005 WL 2296620, at *9.

As the Second Circuit has observed:

> Rule 56(e) of the Federal Rules of Civil Procedure states unequivocally that in order to defeat a motion for summary judgment, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Such an issue is not created by a mere allegation in the pleadings, nor by surmise or conjecture on the part of the litigants.

*U.S. v. Potamkin Cadillac Corp.*, 689 F.2d 379, 381 (2d Cir. 1982) (quotations and citations omitted); *see Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980) (requiring that the party opposing summary judgment "bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful"). Here, the Court finds that plaintiff has failed to set forth any evidence, beyond mere "surmise or conjecture," in support of his allegations that defendants were personally involved in the alleged deprivations of plaintiff's constitutional rights or that a municipal policy or custom caused the alleged deprivations.

(i) Due Process Claims Against Williams

In order to be held liable under § 1983, each defendant must have been personally involved in the alleged constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in [the Second Circuit] that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal citation omitted); *see also Gill v. Mooney*, 824 F.2d

192, 196 (2d Cir. 1987). "[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). As such, the Second Circuit has held that the personal involvement of supervisory officials may be established by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited gross negligence or deliberate indifference to the rights of the plaintiff by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

In this case, plaintiff alleges that Williams was involved in the deprivation of his right to reasonable care and safety in two ways. First, plaintiff alleges that, on June 27, 2002, Williams told other patients that they could smoke in the Hospital. (Compl. ¶ 54.) Second, plaintiff alleges that Williams had foreknowledge of the alleged assault against Williams that occurred on June 27, 2002, and "conspired" with the alleged attackers to harm plaintiff. (Compl. ¶¶ 53, 56.) For the reasons set forth below, the Court finds that plaintiff fails to present facts from which a reasonable factfinder could conclude that Williams was personally involved in the deprivation of any rights guaranteed to plaintiff by the Fourteenth Amendment.

First, plaintiff alleges that Williams violated plaintiff's rights by telling other patients that they could smoke in the hospital, thus causing harm to plaintiff. In particular, plaintiff asserts that he informed Williams about the serious health risks posed to plaintiff by other patients' smoking habits and that he witnessed Williams tell other patients that they could smoke in the Hospital.

However, assuming *arguendo* that the alleged conduct, if true, would constitute a violation of plaintiff's right to reasonable care and safety, plaintiff has failed to produce any affirmative evidence in support of his allegations that Williams was personally involved in causing other patients to smoke. Specifically, in support of his allegations, plaintiff points to a single conversation with Williams on June 27, 2002, wherein Williams allegedly told plaintiff and three other patients that patients were permitted to smoke in the Hospital. (Compl. ¶¶ 46-49, 51-53.) However, plaintiff has failed to present any facts demonstrating that this conversation actually caused any patients to smoke in the Hospital or even that, following the alleged conversation, other patients actually did smoke in the Hospital. Plaintiff points to specific instances of patients smoking in his room at times *preceding* the alleged conversation with Williams, but he fails to allege or to offer any evidence from which this Court could reasonably infer that Williams *caused* patients to smoke in the Hospital.

Thus, the Court finds that plaintiff has failed to present any evidence, beyond conjecture, from which the Court could reasonably infer that Williams' conduct caused plaintiff to suffer "actual or imminent harm." *See Benjamin*, 343 F.3d at 51 n.17 ("To establish the deprivation of a basic human need such as reasonable safety, an

inmate must show 'actual or imminent harm.'") (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). Accordingly, plaintiff's claims against Williams arising from alleged smoking in the Hospital are dismissed.

Second, plaintiff has failed to set forth concrete evidence showing that Williams was personally involved in the alleged June 27, 2002 assault of plaintiff by other patients. Plaintiff offers nothing more than bald assertions that Williams condoned the assault and conspired with the alleged attackers to harm plaintiff. In support of these allegations, plaintiff points to a second conversation involving Williams and three other patients that allegedly also took place on June 27, 2002, wherein Williams and the patients allegedly "conspired and or agreed" that the patients would assault plaintiff that night. (*See* Compl. ¶ 62.)

However, even assuming *arguendo* that plaintiff observed a conversation between Williams and three other patients on June 27, 2002 and that plaintiff was actually assaulted that night, plaintiff has failed to raise a triable issue as to whether Williams conspired or agreed to assault plaintiff. In the complaint, plaintiff concedes that he has no direct knowledge of the contents of the alleged conversation; he claims that Williams pulled the three patients "aside so that she could talk to them without me hearing what they were talking about." (Compl. ¶ 52.) Moreover, at his deposition, plaintiff confirmed that he had no direct knowledge of the conversation or of Williams' approval of the alleged assault. (Hewson Decl., Ex. G.) Although plaintiff also asserted at his deposition that he knew of other patients that had overheard staff members approve the alleged assault, plaintiff has failed to identify those witnesses. (*Id.*)

Accordingly, because plaintiff has failed to produce *any* affirmative evidence, beyond conjecture, demonstrating that Williams participated in, directed, or had knowledge of the alleged June 27, 2002 assault, the Court grants defendants' motion as to plaintiff's claims against Williams arising from that assault.

(ii) Due Process Claims against the City

It is well-settled that municipalities may not be liable under § 1983 for constitutional torts committed by its employees under a *respondeat superior* theory; rather, to prevail against a municipality, a plaintiff must demonstrate that his injury "was caused by a policy or custom of the municipality or by a municipal official 'responsible for establishing final policy.'" *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 108-9 (2d Cir. 2006) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)); *accord Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005). "In essence, 'municipalities such as the City of New York may only be held liable when the city itself deprives an individual of a constitutional right.'" *Warheit*, 2006 WL 2381871, at \*12 (quoting *Davis v. City of New York*, 228 F. Supp.2d 327, 336 (S.D.N.Y.2002)).

Moreover, courts must apply "rigorous standards of culpability and causation" to *Monell* claims in order to ensure that "the municipality is not held liable solely for the actions of its employee." *Bd. of Cty Com'rs of Bryan Cty, Okl. v. Brown*, 520 U.S. 397, 405 (1997). "Thus, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the state." *Davis*, 228 F. Supp. 2d at 336 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985) (Brennan, J., concurring in part and concurring in the judgment)). Instead, to

constitute a "policy," the municipality must have either enacted an official policy measure or an employee with "policy making authority" must have undertaken an unconstitutional act. *See Pembaur*, 475 U.S. at 480-81. A "custom," although it need not receive formal approval by the municipality, must be "so persistent or widespread as to constitute a custom or usage with the force of law" and "must be so manifest as to imply the constructive acquiescence of senior policy-making officials." *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006) (quotation marks and citations omitted). "To succeed on this theory, plaintiff must prove the existence of a practice that is permanent." *Davis*, 228 F. Supp. 2d at 337. For the reasons that follow, the Court finds that no reasonable factfinder could conclude that the alleged deprivation of plaintiff's rights was caused by a municipal policy or custom.

1. Smoking in the Hospital

Plaintiff alleges that it was the "policy or custom" of the City to permit patients to smoke in the Hospital, thus depriving plaintiff of his right to reasonable care and safety during his confinement. However, defendants have demonstrated that the City's official policy is to prohibit smoking in health care facilities, except in designated areas. *See* N.Y.C. Admin. Code § 17-503 ("Smoking is prohibited in . . . [h]ealth care facilities including . . . hospitals . . . [and] psychiatric facilities . . . , provided however, that this paragraph shall not prohibit smoking by patients in separate enclosed rooms of residential health care facilities or facilities where day treatment programs are provided, which are designated as smoking rooms for patients."). Plaintiff has failed to present any facts that create a triable issue as to whether City policymakers altered this policy at the Hospital or that it was the custom or practice of the City to deviate from this policy.[7] In addition, plaintiff has failed to identify any members of the Hospital's staff that allegedly permitted other patients to smoke or the other patients that allegedly told plaintiff they had received permission to smoke from members of the Hospital's staff.

Accordingly, because plaintiff "points to no evidence, other than his own speculation, that such a custom or policy exists," *Warheit*, 2006 WL 2381871, at *13, the Court finds that plaintiff has failed to raise a genuine issue as to whether the City is liable under Section 1983 for permitting patients to smoke in the Hospital. *See Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 370 n.3 (2d Cir. 2003) ("An 'opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions.'") (quoting *Contemporary Mission v. U.S. Postal Serv.*, 648 F.2d 97, 107 n.14 (2d Cir. 1981)).

---

[7] Even assuming *arguendo* that Williams told patients and staff members on June 27, 2002 that patients were permitted to smoke in the hospital, a "single instance" of improper conduct by Williams, who lacks final policymaking authority to suspend the smoking prohibition set forth in New York City Administrative Code § 17-503, would not create a triable issue of fact as to the existence of an unconstitutional policy or a custom or practice so widespread as to have the force of law. *See Sewell v. N.Y.C. Transit Auth.*, 809 F. Supp. 208, 217 (E.D.N.Y. 1992) ("[W]hen an official's discretionary decisions are constrained by policies not of that official's making, those [municipal] policies, rather than the subordinate's departures from them, are the act of the municipality.") (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

### 2. Assaults on Plaintiff

Plaintiff alleges that Hospital staff had foreknowledge of each of the alleged assaults against plaintiff by other patients and that it was the "policy and custom" of the City to allow such assaults to occur. (Compl. ¶ 67.) As to the alleged "policy" that harmed plaintiff, plaintiff fails to identify any municipal official with policy making authority who was involved in an assault against plaintiff or to provide any documents, affidavits, or other evidence from which a reasonable jury could find that such a policy actually exists. *See Warheit*, 2006 WL 2381871, at *12 n.4 (finding no unconstitutional policy where plaintiff "provides no evidence, other than his own bare allegations, that such a policy exists").

As to the alleged "custom" of Hospital staff to permit other patients to assault plaintiff, the Court finds that no reasonable factfinder could conclude that the alleged assaults were caused by an unofficial practice of the Hospital "so persistent or widespread as to constitute a custom or usage with the force of law." *Green*, 465 F.3d at 80.

Plaintiff has failed to specifically identify any defendants, other than Williams, who failed to protect plaintiff from attacks by other patients. Moreover, even as to the unnamed staff members who allegedly permitted assaults on plaintiff, plaintiff has failed to present evidence showing that a trial is needed on the issue of whether a practice existed among Hospital staff to allow assaults against plaintiff. Specifically, plaintiff has failed to present any facts, beyond mere conjecture, demonstrating that the Hospital staff had foreknowledge of the alleged assaults or that they failed to act or to intervene to protect plaintiff from such assaults. *See Vallen*, 2005 WL 2296620, at *11 (granting summary judgment were there was "nothing in the record that shows whether [hospital staff] observed the attack and failed to act or intervene").

First, as to the June 15, 2002 incident, plaintiff fails to offer any facts demonstrating that members of the Hospital's staff knew of or condoned the alleged assault, other than his unsupported speculation that "some of the staff" knew of the assault and gave their approval. (*See* Compl. ¶¶ 35, 38.)

Second, as to the alleged chair-throwing incident, plaintiff fails to present any facts from which a reasonable factfinder could infer that Hospital staff knew of or failed to stop the alleged assault. Plaintiff merely alleges that, *following* the assault, he "told the staff to tell [the other patient] to stop but they did not tell him to stop it." (Compl. ¶ 43.)

Third, as to the June 27, 2002 incident, the Court found *supra* that plaintiff has failed to present any facts that create a triable issue as to the alleged deprivation of plaintiff's rights based on the conduct of Williams. Plaintiff does not allege that any other defendants were involved in that alleged assault.

Finally, as to the alleged assault that occurred on July 9, 2002, plaintiff asserts that he called out to Hospital staff for help but no staff members came to help him. However, there is nothing in the record from which a reasonable juror could find that members of the Hospital's staff observed the alleged assault, or heard plaintiff's call for help and failed to act or to intervene in the assault.

Accordingly, because plaintiff has failed to identify a municipal policy or custom that caused injury to plaintiff, the Court finds that no reasonable factfinder could conclude that

the City was liable for the alleged deprivation of plaintiff's rights.

### E. Other Federal Claims

Plaintiff also alleges various other claims arising from the alleged deprivation of his federal rights. For the reasons that follow, the Court grants summary judgment as to all of defendants' remaining federal claims.

First, because the Court found *supra* that plaintiff has failed to offer any evidence of an agreement between Williams and plaintiff's alleged attackers and because plaintiff has failed to specifically identify any other government officials that entered into such an agreement, plaintiff's Section 1983 and Section 1985 conspiracy claims are dismissed. *See, e.g., Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999). Moreover, because no actionable conspiracy exists, plaintiffs' Section 1986 claims must also fail. *See Dwares v. New York*, 985 F.2d 94, 101 (2d Cir. 1993) ("Liability under § 1986 . . . is dependent on the validity of a claim under § 1985.") (citing *Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir. 1978)).

Second, plaintiff's Section 1981 claim is dismissed because plaintiff has failed to allege, or provide any proof, that any individuals intended to discriminate against plaintiff on the basis of race. *See Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999).

Finally, plaintiff's Section 1988 claim for attorney's fees is dismissed because plaintiff is not the "prevailing party" in this case. 42 U.S.C. § 1988; *see Ass'n for Retarded Citizens of Conn., Inc. v. Thorne*, 68 F.3d 547, 551 (2d Cir. 1995).

### F. State Law Claims

Plaintiff also asserts claims under the New York State Constitution. (Compl. ¶ 1.) Defendants argue that plaintiff's pendent state law claims must be dismissed for failure to file a Notice of Claim pursuant to New York General Municipal Law Sections 50-e and 50-i. *See Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (holding that in federal court, state notice-of-claim statutes apply to state law claims). Plaintiff does not dispute defendants' assertion that a Notice of Claim was not filed for any of his state law claims.

Sections 50-e and 50-i require a party asserting a state law tort claim against a municipal entity or its employees acting in the scope of their employment to file a notice of claim within ninety days of the incident giving rise to the claim and requires the plaintiff to commence the action within a year and ninety days from the date on which the cause of action accrues. *See* N.Y. Gen. Mun. Law §§ 50-e, 50-I. "Under New York law, notice of claim is a statutory precondition to filing suit against the City or its employees." *Harris v. Bowden*, No. 03 Civ. 1617 (LAP), 2006 U.S. Dist. LEXIS 12450, at *22 (S.D.N.Y. March 23, 2006). "A plaintiff's failure to file a notice of claim requires dismissal of pendent state tort claims against the City or its employees in a federal civil rights action." *Robinson v. Matos*, No. 97 Civ. 7144 (TPG), 1999 U.S. Dist. LEXIS 5447, at *3 (S.D.N.Y. April 19, 1999) (citing *Felder v. Casey*, 487 U.S. 131, 151 (1988)).

Furthermore, the Court does not have jurisdiction to allow plaintiff to file a late notice of claim. *Corcoran v. N.Y. Power Auth.*, No. 95 Civ. 5357 (DLC), 1997 U.S. Dist. LEXIS 14819, at *19 (S.D.N.Y. Sept. 26, 1997); *see also* N.Y. Gen. Mun. Law §

15

50(e)(7) ("All applications under this section shall be made to the supreme court or to the county court."). Accordingly, defendants' motion to dismiss plaintiff's state law claims is granted.[8] *See Gonzalez v. City of New York*, No. 94 Civ. 7377 (SHS), 1996 U.S. Dist. LEXIS 5942, at *5-*6 (S.D.N.Y. May 3, 1996) ("Despite the statute's seemingly plain language, it applies not only to suits against municipal corporations but also to suits against 'officer[s], agent[s] or employee[s]' whose conduct has caused injury.").

Moreover, even assuming *arguendo* that plaintiff had filed a notice of claim, the Court would, in its discretion, "decline to exercise supplemental jurisdiction over [plaintiff's] state law claims [because] it has dismissed all claims over which it has original jurisdiction." *Kolari v. New York Presbyterian Hospital*, 455 F.3d 118, 121-22 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)) (internal quotation marks omitted) ("If the federal law claims are dismissed before trial . . . the state claims should be dismissed as well."); *Karmel v. Liz Claiborne, Inc.*, No. 99 Civ. 3608 (WK), 2002 U.S. Dist. LEXIS 12842, *11 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

III. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is GRANTED and plaintiff's claims are dismissed in their entirety. The Clerk of the Court shall enter judgment in favor of defendants and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: March 15, 2007
Central Islip, New York

\* \* \*

Plaintiff appears *pro se*. Defendant are represented by John P. Hewson and Lisa Fleming Grumet, Esqs., Corporation Counsel of the City of New York, 100 Church Street, New York, New York 10007, and Marc A. Konowitz, Esq., New York State Attorney General's Office, 120 Broadway, New York, New York, 10271.

---

[8] Plaintiff also seeks relief under "[a]pplicable . . . State Statutes," but fails to identify, and the Court is unable to discern, which, if any, state statutes apply to this case. (*See* Compl. ¶ 1.) Nevertheless, even assuming *arguendo* that plaintiff had properly alleged state statutory claims, such claims must also be dismissed due to plaintiff's failure to file a Notice of Claim. *See, e.g., Flynn v. New York City Bd. of Educ.*, No. 00 Civ. 3775 (LAP), 2002 WL 31175229, at *9-*10 (S.D.N.Y. Sept. 30, 2002) (dismissing New York state statutory claims due to plaintiff's failure to file a notice of claim).